**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **BELINDA A. SAUNDERS,** | § | |
| | § | |
| **VS.** | § | **NO. A-16-CV-525-LY** |
| | § | |
| | § | |
| **EQUIFAX INFORMATION SYSTEMS** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Equifax Information System's LLC's Motion to Dismiss Amended Complaint (Dkt. No. 38); Saunders' Response (Dkt. No. 43); and Equifax's Reply (Dkt. No. 44). The District Court referred the above motions to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules.

## I. BACKGROUND

Saunders sues Equifax for violations of the Fair Credit Reporting Act. Saunders alleges that Equifax listed on her credit report two accounts on which she is only an "authorized user," and included in the report negative history on those two accounts. Saunders alleges this negatively impacted her credit rating. Saunders disputed the information related to the accounts in a letter to Equifax dated January 28, 2016. The letter informed Equifax that Saunders was not a signer, obligor or accommodation party to the original contracts but merely an authorized user of the accounts, and demanded that the accounts be removed from her credit history. Equifax responded that the accounts were being accurately reported and that it would continue to report the authorized user accounts with the negative history.

Saunders argues that since she is not contractually or financially responsible or obligated for paying the accounts, the information on her credit report is both false and misleading. She asserts Equifax violated its duty under 15 U.S.C. §1681i(a)(1)(a) to conduct a good faith and reasonable investigation into this dispute. Additionally, Saunders complains that Equifax did not send any notifications of the dispute to either Chase or Capital One, in violation of 15 U.S.C. §1681i(a)(2)(A). Saunders also asserts that Equifax is also currently violating 15 U.S.C. §1681e(b), by not following reasonable procedures to assure maximum possible accuracy, because it is allowing a data furnisher (Chase and Capital One) to report negative information on Saunders' credit report.

In this motion, Equifax asserts that Saunders' pleadings fail to allege that Equifax's reporting of the two accounts was inaccurate because she admits that she was an authorized user on the accounts and does not contend that either the balance or status information on those accounts was inaccurate.   Saunders responds that reporting information about authorized user accounts is misleading when it includes "negative" payment history information, as it both has an adverse impact on her credit score, and because it could lead to the denial of credit based on a misunderstanding that she was in some way responsible for the outstanding balance.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P.12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). The Supreme Court has explained that a complaint must contain sufficient factual

matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.* The court generally is not to look beyond the pleadings in deciding a motion to dismiss. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### III. ANALYSIS

#### A.    The FCRA

The FCRA "defines a complex set of rights and obligations that attend the relationships among and between the provider of a credit report, the user of that information and the consumer who is made the subject of such a report." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998), *cert. denied*, 526 U.S. 1044 (1999). Among the obligations that the FCRA imposes is the requirement that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).  In addition,

> if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer . . . the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file.

15 U.S.C. § 1681i(a).  Importantly, to state a claim for relief under the act, the consumer must "establish that a credit report contained an actual inaccuracy [otherwise] the plaintiff's claims fail as a matter of law." *Doster v. Experian Info. Sols., Inc.*, 2017 WL 264401, at *3 (N.D. Cal. Jan. 20, 2017) (internal punctuation and citation omitted); *see also Washington v. CSC Credit Services Inc.*,

199 F.3d 263, 267 n. 3 (5th Cir. 2000) ("In order to pursue a cause of action based upon a willful or negligent violation of 15 U.S.C. § 1681e(b), the report sought to be attacked must be inaccurate.").

To establish a prima facie case for failure to follow reasonable procedures under § 1681e(b), Saunders must demonstrate: (1) that Equifax prepared a consumer report concerning her that contained inaccurate information; (2) that the inaccuracy was due to Equifax's failure to follow reasonable procedures to assure maximum possible accuracy; (3) that she suffered a cognizable injury; and (4) that her injury was caused by the inclusion of the inaccurate entry.  15 U.S.C. § 1681e(b); *Norman v. Experian Info. Sols., Inc.*, 2013 WL 1774625, at *3 (N.D. Tex. Apr. 25, 2013); *Sepulvado*, 158 F.3d at 895-96.

To establish a prima facie case for failure to conduct a reasonable reinvestigation under § 1681i, Saunders must show (1) her consumer report contained inaccurate information; (2) she disputed the accuracy of information on her credit file directly with Equifax; (3) Equifax "did not reinvestigate free of charge and either record the current status of the disputed information or delete the item from the file in the manner prescribed by Section 1681i(a)(5) within the statutory period;" (4) Equifax's "noncompliance was negligent or willful;" (5) Saunders suffered injury; and (6) the injury was caused by Equifax's failure to reinvestigate.  *Norman*, 2013 WL 1774625, at *3-4; 15 U.S.C. § 1681i(a).

Equifax's motion to dismiss contends that Saunders' complaint lacks sufficient pleading on three aspects of a prima facie case for these claims: (1) "inaccurate" information in the report; (2) a cognizable injury to Saunders; or (3) an injury caused by the inaccuracy or Equifax's failure to reinvestigate.

## B.   Inaccuracy

The primary question presented in the motion is whether a plaintiff states a claim under the FCRA by alleging that their credit report is "inaccurate" because it reports an account on which the plaintiff is not the obligor, but rather is only an authorized user, and includes negative payment history for the account.   Equifax contends that because Saunders was in fact an authorized user of the two accounts at issue here, and further that the payment history was correctly reported, the information contained in her report was technically accurate, and she cannot state a claim under the FCRA.   Saunders counters that by including the accounts and their negative history, Equifax is misleading creditors, and further notes that the accounts skew the FICO credit score down, which impacts lenders' decisions in offering her credit.   Relying on the Fifth Circuit's statement in *Sepulvedo* that "a credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions," 158 F.3d at 896, she contends she has stated a claim under the statute.

The Fifth Circuit has held that to be actionable, information challenged in a credit report that is misleading or ambiguous, must be "open to an interpretation that is directly contradictory to the true information."   *Wagner v. TRW, Inc.*, 1998 WL 127812 at *1 (5th Cir. Mar. 4, 1998) (per curiam); *see also Pinner v. Schmidt*, 805 F.2d 1258, 1262-63 (5th Cir. 1986).   Equifax contends that the information on the two "authorized user" accounts on Saunders' credit report is not open to an interpretation that would be "directly contrary" to the actual information.   The actual information is that she is (or was) authorized to use the accounts, but is not obligated to pay them.   The

information on the reports lists the accounts as accounts on which she is an authorized user, but is silent about her obligation to pay charges.

Two cases instructive on this understanding of "misleading" under the FCRA are *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3rd Cir. 2010), and *Miller v. Trans Union, LLC*, 2013 WL 544208 (M.D. Pa. Aug. 14, 2013).  Both of those cases involved situations where the report included a statement that the individual was a "match" or "possible match" to a name on a government list of individuals prohibited from doing business in the United States.  Both courts found the inclusion of the statement was misleading, as it could be read as implying the person was possibly on and possibly not on the government list, when neither of the individuals was actually on the list.  617 F.3d at 709; 2013 WL 544208 at *5.  In *Wagner v. TRW*, the Fifth Circuit applied the same test to a claim that a credit report was misleading because it said the plaintiff had "5 or more" late payments on an account, when she only had 6.  Wagner argued that the use of "or more" was "unreasonably ambiguous because it could mean that she was late 6, 10, or 100 times." *Wagner*, 1998 WL 127812, at *1.  The court disagreed, and while it noted that the "or more" language was "imprecise," it was "neither inaccurate nor open to an interpretation that is directly contradictory to the true information." *Id.*  Applying this same rule, in *Pinner*, the Fifth Circuit held that including a notation of "Litigation Pending" on an account in the plaintiff's credit file was ambiguous to the point of being misleading because "any person could easily have construed the notation 'Litigation Pending' as an indication that the plaintiff was being sued by [the creditor], while the actual situation was the reverse." *Pinner*, 805 F.2d at 1262.  The question here is whether the inclusion of the authorized user account, together with its negative payment history, is susceptible of a construction that is similarly misleading.

6

The Court has located only four decisions in which courts were presented with a claim under the FCRA that raised that question.   The first decision is from the Eastern District of Michigan. There, the court found that the complaint failed to state a claim because the information was technically accurate, and the plaintiff's pleadings on inaccuracy were "conclusory."   Importantly, the court also noted that:

> Plaintiff does not support [her] argument with any factual allegations that anyone was misled by the credit report information.   Nor does Plaintiff present any allegations in her complaint that the "authorized user" notation and reporting of the balance negatively affected her or her creditworthiness.

*Bailey v. Equifax Information Services, LLC*, 2013 WL 3305710 (E.D. Mich. 2013) at *6.   *Bailey* is thus a little different from this case, as here Saunders pleads throughout her complaint that the inclusion of the account information negatively affected her credit rating.   *See, e.g.*, Dkt. No. 37 at 9-10.   The second case is from the Northern District of Georgia.   While the court there was presented with a fact scenario like that here, the question it was deciding was not whether that type of allegation stated a claim, but instead was deciding whether any inaccuracy stemming from the inclusion of the account could be viewed as either willful or reckless (so as to support an award of punitive damages).   *Pedro v. Equifax, Inc.*, 186 F. Supp 3d 1364 (N.D. Ga. 2016).   Relying on the unsettled state of the law on the reporting of "authorized user accounts," and the novelty of that question, the court concluded that the plaintiff could not state a claim for a willful or reckless violation of the statute.   *Id.* at 1369-70.   But it did not reach the issue presented here—whether including the account on a credit report was inaccurate under the FCRA, even if not in a willful or reckless manner.   In the third case, a judge in the Eastern District of Texas confronted the very same

issue here, and denied a motion to dismiss, but did not state his reasons. *Johnson v. Equifax Information Services*, 2017 WL 1438030 (E.D. Tex. April 24, 2017).

Finally, just 30 days ago, Judge Ezra of the San Antonio Division of this court was also presented with this question. Referring to *Pedro* and *Bailey*, he noted that:

> several district courts have held that the listing of a consumer as an "authorized user" of a financial account when the consumer is actually an authorized user of the account is not inaccurate within the meaning of the FCRA. . . . Accordingly, the Court finds that the credit entry at issue is also not misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.

*Ostiguy v. Equifax Information Services*, LLC, 2017 WL 1842947 (W.D. Tex. May 4, 2017) at *3 (citations omitted). As discussed above, *Pedro* did not actually consider the question of accuracy, and in *Bailey* the plaintiff failed to plead any facts showing the report negatively affected her creditworthiness. Similarly, there is no mention in *Ostiguy* of any pleadings concerning the impact the inclusion of the account had on his credit. Interestingly, though, the court added this statement immediately following the above language:

> While Plaintiff's accurate credit entry may be negatively perceived by third parties, credit reporting agencies only have "a duty to make a reasonable effort to report 'accurate' information on a consumer's credit history," and do not have a duty to only report "information which is favorable or beneficial to the consumer." *Cahlin*, 936 F.2d at 1158.

*Id* at *4. As discussed at the outset, the Fifth Circuit has held that an ambiguous statement that can be read in two ways, and that could have a negative impact on the consumer's credit, qualifies as "inaccurate" under the FCRA. *Sepulvado*, 158 F.3d at 895; *Pinner*, 805 F.2d at 1262 (addressing inclusion of "litigation pending" without a statement of who brought the suit). As mentioned, it is not clear what Ostiguy pled in his complaint, but here Saunders has clearly and repeatedly alleged that the inclusion of the authorized user account with negative payment information has lowered her

8

credit score, and impaired her credit.  *Ostiguy* is therefore distinguishable, and to the extent it is not,

the undersigned respectfully disagrees with Judge Ezra's conclusion.

Further, it is important to keep in mind that the Court is reviewing this issue in the context

of a motion to dismiss for failure to state a claim.  As the Third Circuit has noted, generally speaking,

the question of whether including or omitting something from a credit report is sufficiently

misleading such that it can be expected to have an adverse impact on a plaintiff is a question of fact

non suitable for determination on a motion to dismiss:

> And we agree with the three Courts of Appeals to have considered the question that
> even if the information is technically correct, it may nonetheless be inaccurate if,
> through omission, it ''create[s] a materially misleading impression.'' *Saunders v.
> Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir.2008); *see also
> Boggio*, 696 F.3d at 617; *Gorman*, 584 F.3d at 1163. Whether technically accurate
> information was "'misleading in such a way and to such an extent that [it] can be
> expected to have an adverse effect'" is generally a question to be submitted to the
> jury.  *Gorman*, 584 F.3d at 1163 (*quoting Saunders*, 526 F.3d at 150).

*Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014).  The Court concludes that—though they

are far from a model of how to draft a federal claim—Saunders' pleadings contain sufficient factual

detail to allege a claim under the FCRA.[1]   Further, though Equifax emphasizes that the negative

---

[1]Examples of allegations in the Amended Complaint of this sort are:

"Authorized user accounts are calculated into the credit score and FICO score."  Dkt.
No. 37 at 6.

"The negative accounts are crushing Plaintiff's credit scores.  FICO, which calculates
credit scores that are used by a vast majority of lenders, calculates the authorized user
accounts in their scoring.  Because Plaintiff's authorized user account has so many
late payments on it, it led to a charge off, which is devastating Plaintiff's credit score
and crushing her lending power."  *Id.* at 9-10

"Reporting that Plaintiff missed her payments on an account that she has zero
obligation to pay, and reporting it so it looks as if Plaintiff was the individually
responsible for paying is extremely misleading."  *Id.* at 10.

account information is technically accurate, it fails to explain why that information is contained in the credit report if the plaintiff has no obligation to make payments toward the account.  Inclusion of the negative payment history could be viewed by a third person as suggesting the opposite of the true facts—that the plaintiff *does* have financial responsibility for account—as it doesn't make sense to include an account on a credit report that the subject of the report has no responsibility to pay, unless the consumer somehow bears financial responsibility for the debt.

## C.    Injury

Equifax also argues that the complaint fails to adequately allege injury to Saunders, or to allege that the injury was caused by the inaccuracy, or by Equifax's failure to adequately reinvestigate the issue when Saunders disputed the report.  These arguments, however, have no merit.  Saunders has plainly alleged an injury, as has been noted above, in that she has alleged that her credit score and creditworthiness have been negatively impacted by the inclusion of the account on her report.  Dkt. No. 37 at 14-15.  She also alleges she has suffered physical and emotional pain and suffering.  *Id.* at 15.  She includes a request for punitive damages, permitted under the FCRA upon a showing of willfulness or recklessness.  *Id.*  Finally, she adequately ties these damages to Equifax's inclusion of the allegedly inaccurate information, and failure to properly investigate it.  This is more than adequate to survive a motion to dismiss the complaint.  *Cousin v. Trans Union Corp.*, 246 F.3d 359, 369 (5th Cir. 2001) (permitting FCRA damages for emotional distress).

## IV. RECOMMENDATION

In light of the foregoing the undersigned **RECOMMENDS** that the district judge **DENY** Defendant Equifax Information System's LLC's Motion to Dismiss Amended Complaint (Dkt. No. 38).

## V.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 6th day of June, 2017.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

11