**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| BELINDA A. SAUNDERS, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Case No. 1:16-cv-00525-LY |
| | § | |
| EQUIFAX INFORMATION SERVICES | § | |
| LLC, et al., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S**
**AMENDED OBJECTION TO REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Defendant Equifax Information Services, LLC ("Equifax"), by counsel and pursuant to Federal Rule of Civil Procedure 72, respectfully files this amended objection to Magistrate Judge Andrew W. Austin Report and Recommendation ("R&R," Doc. 50). For the reasons stated below, the Court should grant Equifax's Motion to Dismiss Amended Complaint ("Motion to Dismiss," Doc. 38) in full and dismiss all of Plaintiff's claims against Equifax.

i

## TABLE OF CONTENTS

BACKGROUND ..................................................................................................1

STANDARD OF REVIEW ..................................................................................2

ARGUMENT........................................................................................................3

I.    The FCRA Requires Plaintiff to Allege that Equifax Prepared a Consumer Report concerning Plaintiff that Contained Inaccurate Information. ......................3

II.   The Court Failed to Properly Interpret Case Law Analyzing Whether the Accounts Information Is Inaccurate Because It Focused on Whether Plaintiff Alleged that the Accounts Information Can Be Expected To Adversely Affect Credit Decisions Rather than Whether It Was Misleading.......................................5

III.  The Court Concluded that Information that Negatively Affected Plaintiff Must Be Misleading Because the Court Did Not Understand Why the Information Was Included in Plaintiff's Credit File.................................11

IV.   The Court Erred in Suggesting that Plaintiff's Status as an Authorized User Is Susceptible of a Construction that Is Misleading.................................14

CONCLUSION ...................................................................................................15

DMSLIBRARY01\30711246.v1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................2, 3

*Bailey v. Equifax Information Services LLC*,
  No. 13-10377, 2013 WL 3305710 (E.D. Mich. July 1, 2013)...........................4, 6, 7, 8, 9, 10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................2, 3, 9

*Frazier v. Equifax Info. Servs.*,
  2:16-cv-01273-JRG-RSP (E.D. Tex June 5, 2017)...........................................9, 10

*Johnson v. Equifax Info. Servs.*,
  No. 4:16-CV-551, 2017 WL 1438030 (E.D. Tex. Apr. 24, 2017)...........................5

*Norman v. Experian Info. Sols., Inc.*,
  No. 3:12-CV-128-B, 2013 WL 1774625 (N.D. Tex. Apr. 25, 2013) ...................3, 13

*Ostiguy v. Equifax Info. Servs., LLC*,
  No. 5:16-CV-790-DAE, 2017 WL 1842947 (W.D. Tex. May 4, 2017)..................3, 6, 8, 9, 10

*Oxford Asset Mgmt. v. Jaharis*,
  297 F.3d 1182 (11th Cir. 2002) .........................................................................3

*Pedro v. Equifax, Inc.*,
  186 F. Supp. 3d 1364 (N.D. Ga. 2016) ..............................................................5, 8, 9

*Sepulvado v. CSC Credit Servs., Inc.*,
  158 F.3d 890 (5th Cir. 1998), *cert. denied*, 526 U.S. 1044 (1999)...............2, 3, 7, 8, 9, 10, 13

*Toliver v. Experian Info. Sols., Inc.*,
  973 F. Supp. 2d 707 (S.D. Tex. 2013) ...............................................................4, 10

*Washington v. CSC Credit Services Inc.*,
  199 F.3d 263 (5th Cir. 2000) .............................................................................3

**Statutes**

Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*......................................9, 11

15 U.S.C. § 1691b..............................................................................................11

iii

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ........................................................... *passim*

15 U.S.C. § 1681e(b) ...................................................................................1, 3, 4, 10, 13

15 U.S.C. § 1681i...............................................................................................1, 3

**Other Authorities**

12 C.F.R. Pt. 1002, Supp. I, § 1002.10 ...............................................................9, 11, 12

Federal Rule of Civil Procedure 12(b)(6) ....................................................................2

Federal Rule of Civil Procedure 72 ............................................................................2

Robert B. Avery, Kenneth P. Brevoort & Glen B. Canner, *Credit Where None is Due? Authorized User Account Status and "Piggybacking Credit"* (Fed. Reserve Bd. Mar. 5, 2010) https://www.federalreserve.gov/pubs/feds/2010/201023/201023pap.pdf ..................12, 13, 14

DMSLIBRARY01\30711246.v1

## <u>BACKGROUND</u>

This is a case under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x. Plaintiff Belinda A. Saunders alleges that Equifax willfully and/or negligently violated two sections of the FCRA. ("Amended Complaint," Doc. 37 at ¶¶ 39-54). First, Plaintiff alleges that Equifax violated the FCRA at § 1681e(b) by inaccurately reporting two Accounts.[1] (*Id.* at ¶¶ 45-49, 54). Second, Plaintiff alleges that Equifax violated the FCRA at § 1681i(a) by failing to reasonably reinvestigate her dispute that reporting the Accounts was inaccurate. (*Id.* at ¶¶ 44-53).

An "Authorized User" is a person who is permitted by a revolving account holder to use an account without being legally liable to the creditor for any charges incurred. (*See* Doc. 37 at ¶¶ 8, 10, 12, 15, 16, 19. 20). Plaintiff expressly concedes that she is an "Authorized User" of the Accounts. (*Id.* at ¶¶ 8, 10, 12, 15, 16, 19; "Dispute Letter," Doc. 38-1 at 3). Plaintiff also expressly concedes that Equifax, a consumer reporting agency ("CRA"), reported her to be an Authorized User of the Accounts. (Doc. 38 at ¶¶ 13, 19; Doc. 38-1 at 3).

On January 28, 2016, Plaintiff's counsel sent a dispute letter to Equifax disputing the accuracy of Equifax's reporting of the Accounts. (Doc. 38-1; Doc. 37 at ¶¶ 8, 10, 16; Doc. 50 at 1). In her Dispute Letter, Plaintiff's counsel stated:

> It is clear that Ms. Aleman-Saunders is merely an Authorized User on the accounts and you clearly report her to be the Authorized User.

(Doc. 38-1 at 3; *see also* Doc. 50 at 1). In its February 8, 2016 response to Plaintiff's Dispute Letter, Equifax stated that the Accounts were being accurately reported. (Doc. 37 at ¶¶ 9, 11).

Plaintiff filed her Complaint (Doc. 1), and Equifax filed a Motion for Judgment on the Pleadings (Doc. 27). Plaintiff filed her Amended Complaint (Doc. 37), and the parties engaged in

---

[1] Chase account ***10102* and a Capital One account ***2540*.

DMSLIBRARY01\30711246.v1

briefing on Equifax's motion to dismiss.   (Docs. 38, 43, 44). Magistrate Judge Andrew W.
Austin recommended denying Equifax's Motion to Dismiss. (Doc. 50 at 10).

In failing to recommend granting Equifax's motion to dismiss, the magistrate judge
committed two errors. *First*, the Court failed to properly interpret case law analyzing whether the
Accounts information is inaccurate; specifically, whether it is misleading in such a way and to
such an extent that it can be expected to adversely affect credit decisions. *See* Se*pulvado v. CSC
Credit Servs., Inc.*, 158 F.3d 890, 895-96 (5th Cir. 1998), *cert. denied*, 526 U.S. 1044 (1999).
The Court did not examine whether the Accounts information was misleading; instead, it only
examined whether Plaintiff alleged that the Accounts information negatively affected her credit
rating and creditworthiness. (R&R, Doc. 50 at 7-9). *Second*, the Court erroneously determined
that the Accounts information "is silent about her obligation to pay charges." (Doc. 50 at 5-6).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72, following the issuance of a magistrate judge's
recommendation on a dispositive matter, the district court judge must "determine de novo any
part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P.
72(b)(3). The district judge is permitted to "accept, reject, or modify the recommended
disposition; receive further instruction; or return the matter to the magistrate with instructions."
*Id.*

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must allege
"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,
570 (2007)). The complaint's "[f]actual allegations must be enough to raise a right to relief
above the speculative level on the assumption that all of the allegations in the complaint are
true." *Twombly*, 550 U.S. at 555 (internal citations and emphasis omitted). Under *Iqbal* and

*Twombly*, all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Accordingly, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## ARGUMENT

I. **THE FCRA REQUIRES PLAINTIFF TO ALLEGE THAT EQUIFAX PREPARED A CONSUMER REPORT CONCERNING PLAINTIFF THAT CONTAINED INACCURATE INFORMATION.**

To establish a prima facie case for failure to follow reasonable procedures under the FCRA § 1681e(b), Plaintiff must demonstrate that Equifax prepared a consumer report concerning Plaintiff that contained inaccurate information. *Norman v. Experian Info. Sols., Inc.*, No. 3:12-CV-128-B, 2013 WL 1774625, at *3 (N.D. Tex. Apr. 25, 2013); s*ee also Sepulvado*, 158 F.3d at 895-96; 15 U.S.C. § 1681e(b); *Washington v. CSC Credit Services Inc.*, 199 F.3d 263, 267 n. 3 (5th Cir. 2000) ("In order to pursue a cause of action based upon a willful or negligent violation of 15 U.S.C. § 1681e(b), the report sought to be attacked must be inaccurate."). Likewise, to establish a prima facie case for failure to conduct a reasonable reinvestigation under the FCRA § 1681i, Plaintiff must show that her consumer report contained inaccurate information. *Norman*, 2013 WL 1774625, at *3-4; see also 15 U.S.C. § 1681i(a).

A credit entry is "inaccurate" within the meaning the FCRA if (1) "it is patently incorrect," or (2) "is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Ostiguy v. Equifax Info. Servs., LLC*, No. 5:16-CV-790-DAE, 2017 WL 1842947, at *3 (W.D. Tex. May 4, 2017) (quoting *Sepulvado*, 158 F.3d at 895). The

3

mere possibility that a "lay person might not have understood the terminology" used by Equifax in its credit report is not sufficient to hold Equifax liable under the FCRA; rather, Plaintiff must show that potential creditors misperceived the information. *See Bailey*, 2013 WL 3305710, at \*5 (quoting *Dickens v. Trans Union Corp.*, 18 F. App'x 315 (6th Cir. 2001)).Plaintiff's "mere speculation that the notation was misleading, without more, is insufficient as a matter of law to establish a prima facie case of inaccuracy in violation of § 1681e(b)." *Id.* There are several uncontroverted facts that the Court did not consider when issuing the report and recommendation.  First, Plaintiff concedes that Equifax reported her as an authorized user of the Accounts, and did not allege that Equifax used any inaccurate code to designate Plaintiff's authorized user status.  Second, Plaintiff does not allege that any potential creditor was misled. Third, Plaintiff does not allege that she was actually denied credit.  The Complaint does nothing more than provide hypothetical and conslusory allegations that her credit score was negatively affected.  *See e.g.* Doc. 37, ¶¶ 22, 23.  Plaintiff's failure to allege that Equifax inaccurately designated the status of the Accounts means that Equifax is entitled to have Plaintiff's claims dismissed. *See Toliver v. Experian Info. Sols., Inc.*, 973 F. Supp. 2d 707, 719 (S.D. Tex. 2013).

Plaintiff did not argue that the Accounts information was technically inaccurate (Doc. 50 at 5-6); thus, the Court reviewed Plaintiff's claim under the "misleading" analysis (*Id.* at 5-10):

> The question here is whether the inclusion of the authorized user account, together with its negative payment history, is susceptible of a construction that is . . . misleading.

(*Id.* at 6).

II.     **THE COURT FAILED TO PROPERLY INTERPRET CASE LAW ANALYZING WHETHER THE ACCOUNTS INFORMATION IS INACCURATE BECAUSE IT FOCUSED ON WHETHER PLAINTIFF ALLEGED THAT THE ACCOUNTS INFORMATION CAN BE EXPECTED TO ADVERSELY AFFECT CREDIT DECISIONS RATHER THAN WHETHER IT WAS MISLEADING.**

In reaching its decision, the Court referred to four cases involving Authorized Users. (*Id.* at 7).[2] The Court disregarded the first case, *Johnson v. Equifax Info. Servs.*, No. 4:16-CV-551, 2017 WL 1438030 (E.D. Tex. Apr. 24, 2017), because the *Johnson* court did not provide reasons for its decision. The court determined that the second case, *Pedro v. Equifax, Inc.*, 186 F. Supp. 3d 1364 (N.D. Ga. 2016), did not reach the issue presented here—whether including an Authorized User account on a credit report was inaccurate under the FCRA, which is incorrect. While it is correct that the main emphasis of the briefing in that case dealt with the allegations of willfulness, the Court found that Equifax pointed to both a district court decision and guidance from the Consumer Financial Protection Bureau ("CFPB") that indicate listing authorized user information on credit reports is not a violation of the FCRA. *Id.*, 186 F. Supp. 3d at 1369.  And similar to Plaintiff here, the plaintiff in *Pedro* did not cite to any guidance from relevant federal agencies that warns against listing authorized user information on credit reports. *Id.*   Likewise, both Plaintiff in this case and in *Pedro* did not dispute that they were authorized users on the delinquent accounts in question. *Id.* at 1369-70.

---

[2] The Court also erroneously analogized this type of authorized user case to cases involving situations where a consumer reporting agency reported a consumer as part of a terrorist watch list.  *See Cortez v. TransUnion, LLC*, 617 F. 3d 688 (3rd Cir. 2010) and *Miller v. TransUnion, LLC*, 2013 WL 544208 (M.D. Pa. Aug. 14, 2013).  A consumer reporting agency erroneously reporting a consumer as part of a terrorist watch list is a far different circumstance with much further reaching implications than accurately reporting a consumer as an authorized user on an account.  Moreover, in those cases, there was a dispute over whether the consumer was actually part of the terrorist watch list in stark contrast to this case where it is undisputed that Plaintiff was an authorized user on the reported accounts.

The Court failed to properly interpret the two remaining cases *Bailey v. Equifax Information Services LLC*, No. 13-10377, 2013 WL 3305710 at *6  (E.D. Mich. July 1, 2013), and *Ostiguy*, 2017 WL 1842947, because the Court did not properly focus on whether the Accounts information was misleading.  Rather, it erroneously focused solely on whether the plaintiff alleged that the Accounts information can be expected to adversely affect credit decisions despite the fact that Plaintiff never alleged that there was any actual adverse effect and/or that she was denied credit.  The Court failed to understand that it cannot be inaccurate or misleading to report an authorized user account as delinquent if the account is actually delinquent and the trade line expressly indicates that the consumer is an authorized user on the account.  There is no dispute that the Accounts at issue reported Plaintiff as an authorized user and that the account was properly reported as delinquent.

In *Bailey v. Equifax Information Services LLC*, No. 13-10377, 2013 WL 3305710 at *6 (E.D. Mich. July 1, 2013), plaintiff, similar to the instant case, did not deny that she was an authorized user on the account; she therefore argued that the information was misleading rather than technically inaccurate. In the R&R, the Court correctly quoted the *Bailey* court:

> Plaintiff does not support [her] argument with any factual allegations that anyone was misled by the credit report information. Nor does Plaintiff present any allegations in her complaint that the "authorized user" notation and reporting of the balance negatively affected her or her creditworthiness.

(Doc. 50 at 7) (quoting *Bailey*, 2013 WL 3305710 at *6). However, the Court ignored the first sentence concerning whether the information was misleading, and instead, focused solely on the second sentence concerning whether the information negatively affected her creditworthiness. The Court distinguished *Bailey* from this case because "here Saunders pleads throughout her complaint that the inclusion of the account information negatively affected her credit rating." (Doc. 50 at 7).

6

The Court misinterpreted *Bailey*. The issue of whether "the inclusion of the account information negatively affected her credit rating" is only relevant if the information is misleading. The FCRA does not prohibit a CRA from reporting negative information; rather, it prohibits reporting inaccurate information, defined as information that is "***misleading* in such a way and to such an extent that it can be expected to adversely affect credit decisions**." Se*pulvado*, 158 F.3d at 895-96 (emphasis added). Simply alleging that information negatively affected her credit rating is insufficient. As the *Bailey* court continued:

> Plaintiff does allege, in her response, that she "intends to introduce expert testimony at trial showing that ***this additional debt has a negative effect on [Plaintiff's] credit rating*.**" (Pl.'s Resp. at 4.) ***But this conclusory allegation, without more, again, is insufficient to survive a motion to dismiss*.** Plaintiff has not pleaded facts to support a claim.

*Bailey*, 2013 WL 3305710 at *6 (emphasis added). The *Bailey* court held that the allegation about a negative effect on the Plaintiff's credit rating is conclusory because a negative effect on credit rating does not explain why the information is misleading; instead, as the *Bailey* court explains, the allegation merely concludes that if the information produces a negative effect, it must have been caused by misleading information. *Id.* Such a conclusory allegation is insufficient to support a claim under the FCRA. *Id.*

The exact same situation is present here.  The only allegations in the complaint are conclusory in nature that the information negatively affected her credit rating.  (Doc. 37, ¶¶ 21-23).  Plaintiff has never alleged that she suffered any actual damages associated with any denial of credit or that any creditor was misled.  *Id.*  The entirety of Plaintiff's argument is hypothetical, and not based in any reality.  Moreover, Plaintiff's allegations do not equate to a finding that the information about the Accounts was *misleading* in such a way and to such an extent that it can be expected to adversely affect credit decisions.

7

*Ostiguy* is a case involving almost identical facts to this case. Like here, the issue was whether reporting the plaintiff as an Authorized User of an account with negative payment information was inaccurate. *Ostiguy*, 2017 WL 1842947, at *3. Like here, the plaintiff conceded in his letters to Equifax and in his complaint that he was an Authorized User of the account. *Id.* The plaintiff alleged that being reported as an authorized user of the Account "is causing Plaintiff damage." *Id.* The court held that the information listing the plaintiff as an authorized user of the account was not misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions. *Id.* (citing *Sepulvado*, 158 F.3d at 895). The court stated that several district courts have held that the listing of a consumer as an "authorized user" of a financial account when the consumer is actually an authorized user of the account is not inaccurate within the meaning of the FCRA. *Id.* (citing *Bailey* and *Pedro*). Contrary to the Court's interpretation in the R&R of *Bailey* that allegations of negative affect are insufficient if the information is not misleading, the *Ostiguy* court added:

> While Plaintiff's accurate credit entry may be negatively perceived by third parties, credit reporting agencies only have "a duty to make a reasonable effort to report 'accurate' information on a consumer's credit history," and do not have a duty to only report "information which is favorable or beneficial to the consumer." *Cahlin*, 936 F.2d at 1158. As the Eleventh Circuit has observed, "the very economic purpose for credit reporting companies would be significantly vitiated if they shaded every credit history in their files in the best possible light for the consumer." *Id.*

*Ostiguy*, at *4. Nevertheless, in the R&R, the Court distinguished *Ostiguy* for the same reason it distinguished *Bailey*:

> As mentioned, it is not clear what Ostiguy pled in his complaint, but here Saunders has clearly and repeatedly alleged that the inclusion of the authorized user account with negative payment information has lowered her credit score, and impaired her credit. *Ostiguy* is therefore distinguishable, and to the extent it is not, the undersigned respectfully disagrees with Judge Ezra's conclusion.

(Doc. 50 at 8-9). As stated above, Equifax respectfully believes that the Court focused on the wrong inquiry, namely Plaintiff's conclusory allegation that she was damaged by Equifax's reporting, despite the fact there is not a single allegation that she was denied credit or that any potential creditor was misled.   The Court should instead have focused on the fact that the Accounts were being accurately reported and as such, it was not misleading.

On June 5, 2017, another Authorized User decision was issued in *Frazier v. Equifax Information Servies, LLC*, 2:16-cv-01273-JRG-RSP, Dkt No. 28 (E.D. Tex June 5, 2017) (attached hereto as Exhibit A). The magistrate judge recommended dismissing a case with the same set of operative facts to this case, namely a concession that the plaintiff is an authorized user and that Equifax reported her in that manner.

> A credit entry is "inaccurate" if "it is patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998) (citing *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986)).

> Accepting all well-pleaded facts as true, Frazier's complaint does not state a plausible claim under either definition of inaccuracy. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). There is no dispute that the credit entry listing Frazier as an "authorized user" is accurate—Frazier admits she was an authorized user of her spouse's account. Nor is it plausible that the credit entry is misleading. Frazier does not allege Equifax or Chase erroneously reported she was financially or legally responsible for the account. Frazier acknowledges the term "authorized user" does not connote financial obligation. *See, e.g.*, Am. Compl. ¶ 7. As other district courts have concluded, the listing of a consumer as an "authorized user" of an account when the consumer is actually an authorized user is not misleading under the FCRA. *See e.g., Bailey v. Equifax Info. Servs., LLC*, No. 13-10377, 2013 WL 3305710, at *5 (E.D. Mich. July 1, 2013); *Pedro v. Equifax, Inc.*, 186 F. Supp. 3d 1364, 1370 (N.D. Ga. 2016); *Ostiguy v. Equifax Info. Servs., LLC*, No. 5:16-CV-790- DAE, 2017 WL 1842947, at *3 (W.D. Tex. May 4, 2017). Indeed, when an authorized user is the account holder's spouse, the creditor must report the authorized user pursuant rules promulgated under the Equal Credit Opportunity Act (ECOA). *See* 15 U.S.C. § 1691; 12 C.F.R. § 1002.10. Plaintiff has been unable to articulate any reasoned basis to conclude that reporting truthful information that is required to be reported could be deemed misleading.

*Id.* The Court's analysis in *Frazier* was correct and the Court should similarly adopt that finding here. The District Court, through Judge Gilstrap, adopted the recommendation of the magistrate judge in *Frazier* on June 20, 2017, over the objection of plaintiff. *Frazier v. Equifax Information Servies, LLC*, 2:16-cv-01273-JRG-RSP, Dkt No. 31 (E.D. Tex June 20, 2017) (attached hereto as Exhibit B).

The fundamental error in the Court's analysis was by failing to focus on the preliminary inquiry, namely whether the reporting was ***misleading***; instead, it focused on the conclusory and unsubstantiated allegation that the reporting of her accurate authorized user account reduced her FICO score.[3] Under *Sepulvado*, information is not inaccurate merely because it has a negative or adverse effect, or might negatively affect credit decisions, it must also be misleading. Both *Bailey* and *Ostiguy* highlight this point. *Bailey* highlights the point by holding that the "negative effect on [Plaintiff's] credit rating" is merely a "conclusory allegation" because it is insufficient to show that anyone was misled. *Ostiguy* highlights the point by noting that information is not inaccurate merely because it may be "negatively perceived by third parties."

As the *Bailey* court held, a FICO score reduction does not demonstrate that the FICO scoring models were misled. However, the R&R suggests that the Court failed to consider that the FICO scoring models were not misled,[4] that the FICO scoring models understood that the

_____

[3] To be inaccurate the credit entry must be "***misleading*** in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Ostiguy*, 2017 WL 1842947, at *3 (emphasis added) (quoting *Sepulvado*, 158 F.3d at 895).

[4] The Amended Complaint does not allege that anyone, even the people who develop scoring models like FICO, was misled. As Plaintiff concedes, Equifax clearly reported the Accounts to be Authorized User accounts, which is an industry term clearly understood by the people at FICO and the FICO scoring models. If scoring models like FICO use the Accounts information when calculating Plaintiff's score, Equifax cannot be held responsible for that use of Equifax's consumer report. So long as the consumer report is accurate, Equifax cannot be held responsible for scoring agencies' decisions. *See Toliver v. Experian Info. Sols., Inc*., 973 F. Supp. 2d 707,

Accounts were Authorized User because they were clearly reported as such, and that the FICO scoring models reduced Plaintiff's credit score for legitimate credit-related reasons; specifically, even though she is not legally liable for paying the charges on the Accounts, being the Authorized User of delinquent accounts may be predictive of reduced creditworthiness.

## III.   THE COURT CONCLUDED THAT INFORMATION THAT NEGATIVELY AFFECTED PLAINTIFF MUST BE MISLEADING BECAUSE THE COURT DID NOT UNDERSTAND WHY THE INFORMATION WAS INCLUDED IN PLAINTIFF'S CREDIT FILE.

The Court appeared to be confused as to why authorized user accounts are reported, the federal regulations associated with the reporting of such accounts, and the obligations of consumer reporting agencies to provide accurate, not necessarily positive, information.  This is evidenced by the following:

> Further, though Equifax emphasizes that the negative account information is technically accurate, it fails to explain why that information is contained in the credit report if the plaintiff has no obligation to make payments toward the account. Inclusion of the negative payment history could be viewed by a third person as suggesting the opposite of the true facts—that the plaintiff *does* have financial responsibility for account—as it doesn't make sense to include an account on a credit report that the subject of the report has no responsibility to pay, unless the consumer somehow bears financial responsibility for the debt.

(Doc. 50 at 9-10). Thus, the Court assumed the Accounts information must be inaccurate if Plaintiff was not legally liable for charges on the Accounts. (*Id.*).

As set forth in Equifax's Motion to Dismiss, regulatory guidance promulgated under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.* constitutes part of the reasons why Equifax includes Authorized User accounts on its credit files. Regulation B, issued by the Consumer Financial Protection Bureau ("CFPB") who was authorized by Congress to promulgate regulations governing the consumer credit market (*see* 15 U.S.C. § 1691b), provides

---

729 (S.D. Tex. 2013) (rejecting § 1681e(b) claim where plaintiff contended that reported information "cause[d] a disproportionate impact on her credit score" but "failed to produce any evidence to suggest that [the information was] in any way inaccurate").

DMSLIBRARY01\30711246.v1

that credit accounts held by married persons must be considered in a way that "reflect[s] the participation of both" the primary account-holder and his or her spouse if the spouse "is *permitted to use* or is contractually liable on the account." 12 C.F.R. § 1002.10 (emphasis added). And, where a person is an authorized user on his or her spouse's credit account, Regulation B *requires* that information concerning the account be included in the user's credit records. *See id.* ("If a creditor furnishes credit information to a consumer reporting agency concerning an account designated to reflect the participation of both spouses, the creditor shall furnish the information in a manner that will enable the agency to provide access to the information in the name of each spouse."). Indeed, reporting authorized user tradeline information often increases such users' creditworthiness, as it enables them to build credit history without taking on debt. *See* Avery, Brevoort & Canner, *supra*, at 1-4.

The Amended Complaint does not clarify whether Plaintiff was the spouse of the accountholder; nevertheless, the regulatory guidance issued under Regulation B also addresses situation where a non-spouse is designated as an authorized user. The Official Staff Commentary to Regulation B provides that "*a creditor has the option to designate . . . all accounts with an authorized user[] to reflect the participation of both parties, whether or not the accounts are held by persons married to each other.*" 12 C.F.R. Pt. 1002, Supp. I, § 1002.10 (emphasis added). The CFPB thus has expressly authorized creditors to send Equifax authorized user tradeline information for inclusion in the consumer reports of spousal and non-spousal authorized users alike. Consistent with this guidance, "creditors generally have followed a practice of furnishing to credit bureaus information about all authorized users, whether or not the authorized user is a spouse." Avery, Brevoort & Canner, *supra*, at 1.

In keeping with these policies, there are good reasons to report authorized user tradeline information even where doing so may not be favorable to the consumer. For example, an authorized user of a credit card is "legally permitted to run up charges on the account." Avery, Brevoort & Canner, *supra*, at 2 n.5. As a result, authorized user tradeline information may well be relevant in evaluating the user's creditworthiness, as it could bear on how responsibly he or she uses credit. *See id.* In promulgating these provisions of Reg. B, the Federal Reserve Board was motivated in part by the significant role that spousal authorized users were found to play in the maintenance of an account, such that the payment history on an account was often "as much the product of the user's contribution as that of the obligor." *Id.* at 2. The effect that eliminating authorized user accounts from credit scoring models would have on individual credit scores has been evaluated. Avery, Brevoort & Canner, *supra*, at 2. The results suggest that removing this information has relatively little effect on credit scores, but may reduce model predictiveness. *Id.* As the Amended Complaint states, including Authorized User accounts in credit reports can help people benefit from their shared management of a credit card account. (Doc. 37 at ¶ 18). It also helps lenders by providing credit scores that are based on a full snapshot of the consumer's credit history. (*Id.*).

At bottom, though, it is not up to Plaintiff or this Court to challenge the wisdom or fairness of reporting authorized user information. So long as the information a CRA reports is "accurate"—and it is here—the CRA cannot be held liable under §§ 1681e(b) or 1891i(a). *See Norman*, 2013 WL 1774625 at *3; *Sepulvado*, 158 F.3d at 895-96. As the Eleventh Circuit has observed:

> Although a credit reporting agency has a duty to make a reasonable effort to report "accurate" information on a consumer's credit history, it has no duty to report only that information which is favorable or beneficial to the consumer. Congress enacted FCRA with the goals of ensuring that such agencies imposed

13

> procedures that were not only 'fair and equitable to the consumer,' but that also
> met the 'needs of commerce' for accurate credit reporting. Indeed, the very
> economic purpose for credit reporting companies would be significantly vitiated if
> they shaded every credit history in their files in the best possible light for the
> consumer. Thus, the standard of accuracy embodied in [§ 1681e(b)] is an
> objective measure that should be interpreted in an evenhanded manner toward the
> interests of both consumers and potential creditors in fair and accurate credit
> reporting.

*Cahlin*, 936 F.2d at 1158. This Court should interpret and apply the Act in harmony with the

regulations, regulatory guidance, and industry practice relating to the ECOA.

## IV. THE COURT ERRED IN SUGGESTING THAT PLAINTIFF'S STATUS AS AN AUTHORIZED USER IS SUSCEPTIBLE OF A CONSTRUCTION THAT IS MISLEADING.

Plaintiff repeatedly alleged in her Amended Complaint that she is not legally liable on the

Accounts because she is an Authorized User. (*See* Doc. 37 at ¶¶ 8, 10, 12, 15, 16, 19. 20).

Plaintiff made the same statement in her Dispute Letter to Equifax. (Doc. 38-1 at 3). Plaintiff

made no effort to explain in her Amended Complaint or her Dispute Letter why her status as an

Authorized User meant that the account was wrongfully being reported. The reason is simple.

The term "Authorized User" has a well-accepted definition:

> An "authorized user" is a person who is permitted by a revolving account holder
> to use an account without being legally liable for any charges incurred.

Robert B. Avery, Kenneth P. Brevoort & Glen B. Canner, *Credit Where None is Due?*

*Authorized User Account Status and "Piggybacking Credit"* at 2, 3 (Fed. Reserve Bd. Mar. 5,

2010) https://www.federalreserve.gov/pubs/feds/2010/201023/201023pap.pdf. Plaintiff concedes

that "Authorized User" has an accepted industry definition. (Doc. 37 at ¶ 20).

Equifax reported Plaintiff as an Authorized User of the Accounts. Plaintiff also expressly

concedes that Equifax, a consumer reporting agency ("CRA"), reported her to be an Authorized

User of the Accounts. (Doc. 38 at ¶¶ 13, 19; Doc. 38-1 at 3).

In the R&R, the court stated,

14

> Equifax contends that the information on the two "authorized user" accounts on Saunders' credit report is not open to an interpretation that would be "directly contrary" to the actual information. The actual information is that she is (or was) authorized to use the accounts, but is not obligated to pay them. The information on the reports lists the accounts as accounts on which she is an authorized user, ***but is silent about her obligation to pay charges***.

(Doc. 50 at 6-7) (emphasis added). The Court's finding that Equifax's reporting is silent on Plaintiff's obligation to pay charges is incorrect.  To the contrary, the indisputable status of the Accounts as Authorized User accounts necessarily means that Plaintiff is not obligated to pay charges on the Accounts. Given the fact that the term "Authorized User" has a specific industry definition, any potential creditor would know and understand that Plaintiff is not contractually liable to pay the charges.  Plaintiff offers no legal, regulatory, or industry reason why the Accounts should be suppressed simply because they are reporting negative payment information.

## <u>CONCLUSION</u>

For the reasons stated above, Equifax respectfully objects to the magistrate judge's R&R. Plaintiff argues that an authorized user account should be deleted from her credit file simply because it contains negative information that theoretically could reflect upon her. Yet the law, the regulations, and the industry permit and in some instances require the practice. Given that Equifax accurately reported that Plaintiff is an authorized user on the Accounts, the Court should dismiss the Amended Complaint. Because the defects in the Amended Complaint are fatal and cannot be cured with amendment, the dismissal should be with prejudice.

15

Respectfully submitted: June 20, 2017.

<div style="margin-left: 40%;">

KING & SPALDING LLP

/s/ *Kendall W. Carter*
Kendall W. Carter
Texas Bar No. 24091777
kcarter@kslaw.com
1180 Peachtree Street NE
Atlanta, GA 30309
Tel (404) 572-2459

*Counsel for Equifax Information Services LLC*

</div>

16

## CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed a true and correct copy of the foregoing with the Court using the CM/ECF system, which will send notification of such filing to the following:

Dennis Dean McCarty
McCarty Law Firm
P. O. Box 111070
Carrollton, TX 75011
***Attorney for Plaintiff***

Dated: June 20, 2017.

                                        */s/ Kendall W. Carter*
                                        Kendall W. Carter

DMSLIBRARY01\30711246.v1