**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **BELINDA A. SAUNDERS** | § | |
| **Plaintiff** | § | |
| | § | **Civil Action No. 1:16-cv-525-LY** |
| **v.** | § | |
| **EQUIFAX INFORMATION** | § | |
| **SERVICES, LLC** | § | |
| **Defendant** | § | |

PLAINTIFF'S RESPONSE TO EQUIFAX INFORMATION SERVICES' OBJECTION TO REPORT AND RECOMMENDATIONS

COMES NOW, Plaintiff Belinda A. Saunders(hereinafter Plaintiff) files her brief in opposition to Defendant Equifax Information Services' Objections to Report and Recommendations(hereafter Equifax or Defendant)

**FACTS, ARGUMENT, AUTHORITIES AND BRIEF**

1. Equifax reported negative payment history on Plaintiff's credit report that did not belong to her. Plaintiff was added as an authorized user on two accounts, Capital One and Chase Bank. Authorized users are not required to sign any contracts with the credit lenders. Authorized users are not responsible on any level for paying that they were added to. Primary account holders simply call the credit grantors, request the authorized user to be added to the account, the credit grantor sends the credit card, in the authorized users name to the primary account holder. The primary account holder is the only individual that is responsible for payment of the account. Once the authorized user is added to the primary account holder's account, the primary account holder's payment

history is then mirrored on the authorized user's credit report, warts and all. In this case, the primary account holder's negative and derogatory information on the two accounts was mirrored on Plaintiff's credit report and reporting as if it was Plaintiff's negative and derogatory credit information.

2. Fifth Circuit has ruled directly on what can make a credit entry inaccurate. The Fifth Circuit standard of an inaccurate credit entry is that it can be "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions". It is interesting to note that the Fifth Circuit standard is that if it "can" adversely affect credit decisions, not that it did adversely effect credit decisions. *please see Sepulvado vs. CSC Credit Services*, 158 F.3d 890, 895-96 (5th Cir. 1988) (A credit entry may be "inaccurate" within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that **it can be expected** to adversely affect credit decisions".

3. Authorized user accounts are used in FICO scores, which directly affects credit decisions. FICO scores are used by 90% credit lenders. When the primary account holder misses payments and negative credit information is reported, it not only lowers the primary account holder's credit score, but it also lowers the authorized user's credit score. Because it lowers the authorized user's FICO score, it directly negatively affects credit decisions.

4. The Fifth Circuit ruling in *Sepulvado vs. CSC Credit Services*, 158 F.3d 890, 895-96 (5th Cir. 1988) didn't state in their ruling that the account

had to have caused negative credit decisions. The Fifth Circuit was careful with their wording and stated that it is inaccurate if "it can be expected" to negatively affect credit decisions.

       *Misleading credit decisions is a jury issue*

5. The Third Circuit added onto the Fifth Circuit's *Sepulvado* ruling by stating that it is a question for the jury to determine if "technically accurate" information on a credit report was misleading in such a way that it could be expected to have an adverse effect. *please see Seamans v. Temple Univ.,* 744 F.3d 853 (3d Cir. 2014)(Whether technically accurate information was misleading in such a way and to such an extent that it can be expected to have an adverse effect generally is a question to be submitted to the jury, on a claim under the FCRA contesting the reasonableness of an investigation. Fair Credit Reporting Act, §§ 607(b), 623(b), 15 U.S.C.A. §§ 1681e(b), 1681s–2(b).).

6. Equifax attempts to argue that the account is accurate and should continue to report. Equifax's own practice and policy is to remove authorized user accounts after are disputed by the authorized user. Equifax's argument in this case is contrary and contradicts their own pattern and practice.

       *CFPB*

7. Equifax argued that they are regulatory bound to report the account because of the CFPB. This is disingenuous at best because Equifax fails to even mention that the CFPB states on their website that the credit bureaus will remove authorized user accounts when authorized users request them to be removed. It states that when debts from a spouse(in reality, any other individuals) are being reported on an authorized user's credit

report, because authorized users do not have any responsibility for payment, the reporting agencies will remove the accounts.  Please see.

http://www.consumerfinance.gov/askcfpb/1479/if-i-dont-pay-my-deceased-spouses-debts-using-my-own-funds-will-it-affect-my-credit.html, please also see Dkt. No. 37-2.

      8.   Equifax attempted to create an argument that they are forced to continue to report authorized users because the CFPB requires them to report the account.  They painted an argument that isn't accurate, regardless of why the account is originally reported, if the primary account holder's debt is on the authorized users credit report, the credit reporting bureaus will remove that account and is condoned by the CFPB.

      9.   The reporting of another individual's account payment history on a consumer's credit report when that consumer does not have any responsibility for paying, and at times, not even aware that they were added, and has even asked for the accounts removal, is inaccurate on its face. The three big credit reporting agencies, TransUnion, Experian and Equifax are aware of that, that is why they will remove the account from an authorized users credit report with nothing more than the authorized user requesting the account to be removed.  Experian states on their on their website that they will delete the account when requested from an authorized user because they do not have any responsibility for paying the debt.  Please see Experian's website, available at http://www.experian.com/blogs/ask-experian/2013/12/18/experian-will-removed-delinquent-authorized-user-accounts-on-request, (Because an authorized user has no responsibility for repayment of the debt Experian will remove authorized user accounts with negative payment history upon request).  TransUnion has removed every one of the authorized user accounts that Plaintiff's Counsel has requested over the last 24 months

for his clients, no questions asked, if it is requested to be removed, TransUnion will remove it immediately. Equifax will as well, but it literally is a coin toss if Equifax will remove or continue to report that authorized user accounts, even when dispute for the same client, on the same letterhead. If the CFPB was an absolute bar from the bureaus from removing authorized user accounts once they are disputed from authorized users, then all three of the reporting agencies wouldn't be removing them upon request.

10. United States Magistrate Judge The Honorable Andrew W. Austin's analysis of the facts, his application of the facts to multiple Fifth Circuit cases that defines an inaccurate credit entry, as well as his analysis of Equifax's cited cases, was directly on point and an accurate decision after reviewing all of the issues in this case.

11. The Honorable Andrew W. Austin considered the cases that Equifax cited in their argument and distinguished them from the present case facts and the Fifth Circuit's standard. Equifax didn't like his detailed analysis so they are objecting to this correct reading of the authority they used in their argument. Plaintiff's Counsel in this case is the same as in the Ostiguy case that Equifax cites, that case is now being appealed to the Fifth Circuit Court of Appeals because his analysis and his statements in the ruling is directly contrary to the Fifth Circuit's well established standard.

*Credit Reporting is a debt collection activity*

12. The Honorable Andrew W. Austin was correct when he rationalized it doesn't make sense to include an account on a credit repot unless the consumer bears some responsibility for the debt. Please see Saunders v. Equifax Info. Sys., A-16-CV-525-LY, 2017 WL 2455180, at *5 (W.D. Tex. June 6, 2017)(Further, though Equifax emphasizes that the negative account information is technically accurate, it fails to

explain why that information is contained in the credit report if the plaintiff has no obligation to make payments toward the account. Inclusion of the negative payment history could be viewed by a third person as suggesting the opposite of the true facts—that the plaintiff *does* have financial responsibility for account—as it doesn't make sense to include an account on a credit report that the subject of the report has no responsibility to pay, unless the consumer somehow bears financial responsibility for the debt.). Credit Reporting is a debt collection activity and will subject debt collectors to liabilyt under the Fair Debt Collection Act. *Please see Edeh v. Midland Credit Mgmt., Inc.,* 748 F. Supp. 2d 1030, 1035-36 (D. Minn. 2010) aff'd, 413 Fed. Appx. 925 (8th Cir. 2011) (This Court finds the FTC's reasoning persuasive. This Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver. Consistent with the views of the FTC—and consistent with the views expressed in *Purnell, Quale,* and *Semper*—the Court finds that Midland was engaged in "collection of the debt" in violation of § 1692g(b) when it reported Edeh's disputed debt to ***1036** the CRAs before sending verification of that debt to Edeh.); *see also Edeh v. Midland Credit Mgmt., Inc.,* 748 F. Supp. 2d 1030, 1035-36 (D. Minn. 2010) aff'd, 413 Fed. Appx. 925 (8th Cir. 2011)( The FTC explains, "the reality is that debt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls."); *Please see Sullivan v. Equifax, Inc.,* CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002) (The term "communication" is given a very broad definition in the act. It means "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). One commentator has remarked that "[t]his

provision recognizes that reporting a debt to a credit reporting agency is "a powerful tool designed, in part, to wrench compliance with payment terms ...." Hobbs, § 5.5.10, p. 170–71 (citing *Rivera v. Bank One,* 145 F.R.D. 614, 623 (D.P.R.1993) & *Matter of Sommersdorf,* 139 B.R. 700, 701 (Bankr.S.D.Ohio 1991)). *See Ditty v. CheckRite, Ltd., Inc.,* 973 F.Supp. 1320, 1331 (D.Utah 1997). Because reporting a debt to a credit reporting agency can be seen as a communication in connection with the collection of a debt, the reporting of such a debt in violation of the provisions of § 1692e(8) can subject a debt collector to liability under the FDCPA.)

13. There is only one reason to report debts to credit reporting agencies, that is to hurt credit scores, inform potential lenders that the consumer has a history of late or non-payment.

14. Plaintiff disputed the accounts with a detailed dispute, stating they she didn't have any contractual or financially responsibility for the account and wanted the account to be removed from her credit report. Equifax routinely removes authorized user accounts with the same dispute letter from Plaintiff's Counsel, Equifax's argument that the dispute letter is something other than what it is truly requesting, the removal of an account that does not belong to Plaintiff and which Equifax normally removes is disingenuous. Equifax has taken the argument throughout their motion to dismiss that because the account is being reported as an authorized user, then the report is accurate. That isn't the issue in this case at all. The dispute letter states that because Plaintiff is an authorized user, and was not contractually or financially responsible for paying the account, Plaintiff requested the accounts to be removed from her credit report. Please see Dkt. No. 38-1.

*Damages*

15. Equifax has argued that Plaintiff didn't plead specific damages, which isn't required. Please see In re Methyl Tertiary Butyl Ether (""MTBE") Products Liab. Litig., 568 F. Supp. 2d 376, 383–84 (S.D.N.Y. 2008)(even if the defendants had made this motion under Rule 8 at the beginning of the litigation, dismissal would still be inappropriate because the Federal Rules do not require a plaintiff to specify the relief sought in the complaint. As Judge Posner has explained: Although Rule 8(a)(3) of the civil rules requires that a complaint contain 'a demand for judgment for the relief the pleader seeks,' the demand is not itself a part of the plaintiff's claim, and so failure to specify relief to which the plaintiff was entitled would not warrant dismissal under Rule 12(b)(6) (dismissal for failure to state a claim).“Any doubt on this score is dispelled by Rule 54(c), which provides that a prevailing party may obtain any relief to which he's entitled even if he has not demanded such relief in his pleadings. Rule 54(c) states in full: A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, *even if the party has not demanded that relief in its pleadings.* Under the plain language of the Federal Rules, a party does not need to demand a particular form of relief in the complaint (*i.e.,* the pleadings). **It is sufficient for the plaintiff to give notice of her claims and state that she is seeking relief as may be deemed necessary, just and proper by the Court (*i.e.,* relief to which the party is entitled).** Tonneson's complaint satisfies these requirements.); please also see Edirect Publ'g, Inc. v. Livecareer, Ltd., 12-CV-1123 JLS (JMA), 2014 WL 11974992, at *6 (S.D. Cal. Mar. 18, 2014)(Pursuant to Federal Rule of Civil Procedure 8, a request for general damages need only “give notice

of [the plaintiff's] claims and state that [the plaintiff] is seeking relief as may be deemed necessary, just and proper by the Court." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 568 F. Supp. 2d 376, 384 (S.D.N.Y. 2008). eDirect so alleges. Thus, in light of the foregoing, eDirect has adequately pleaded each of the elements of its claims concerning LiveCareer's breaches of the 2005 and 2006 Agreements. Accordingly, the Court **DENIES** LiveCareer's MTD as to these claims.); please also see Doe v. Siddig, 810 F. Supp. 2d 127, 137 (D.D.C. 2011)(However, Doe is not required to plead with particularity damages that would typically be expected to flow from her claims. *See* Fed.R.Civ.P. 8(a)(3), 9(g);)

16. Plaintiff's complaint satisfies Rule 8's requirement of pleading damages. Plaintiff properly plead that she experienced actual damages, including specifically pleading mental anguish, which her husband will testify to at the appropriate time, either by affidavit in response to summary judgment or at trial. Even though Plaintiff has had out of pocket damages, The Fifth Circuit has ruled that Plaintiff can claim damages for mental distress, reputation and creditworthiness, even if there isn't any out-of-pocket losses.  Please see  Cousin v. Trans Union Corp., 246 F.3d 359 (5th Cir. 2001)(Actual damages for negligent noncompliance with Fair Credit Reporting Act (FCRA) may include damages for humiliation or mental distress even if the consumer has suffered no out-of-pocket losses, as well as damages for injury to reputation and creditworthiness. Consumer Credit Protection Act, § 617, as amended, 15 U.S.C.A. § 1681*o*.); please also see *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 305 (5th Cir. 2009)(It "does not require proof that medical or psychiatric care was required as a result of the incident, but

minimal worry and inconvenience should not be compensated." Neither is expert testimony mandatory, as Lexington contends.).

17. Even though Plaintiff can prove that she suffered out of pocket expenses, including but not limited to having to hire a credit company to help her with her credit issues prior to hiring current counsel, but even if Plaintiff can't show any actual damages at all, she still has damages, statutory damages. Please see. In re Horizon Healthcare Services Inc. Data Breach Litig., 846 F.3d 625 (3d Cir. 2017)(alleged violation of customers' statutory rights under FCRA was de facto injury that satisfied concreteness requirement for standing. Equifax's almost random reporting policies of authorized users and how they are artificially lowering consumers credit scores with the authorized user accounts that they randomly decide to continue to report, is reckless at best, which is the standard for willful under FCRA claims. Statutory damages require a showing of willful, which malice and evil motive are not required, just if reckless. please also see Cousin v. Trans Union Corp., 246 F.3d 359 (5th Cir. 2001)(Malice or evil motive need not be established for a punitive damages award under Fair Credit Reporting Act (FCRA), but the violation must have been willful. Consumer Credit Protection Act, § 616(a)(2), as amended, 15 U.S.C.A. § 1681n(a)(2).). A determination if Equifax's actions were willful is an issue for a jury. Ashby v. Farmers Ins. Co. of Oregon, 565 F. Supp. 2d 1188, 1206 (D. Or. 2008)Courts that have addressed the issue have held uniformly that whether a FCRA violation is willful is a matter for the jury. *See, e.g., Whitfield v. Radian Guar.,* 501 F.3d 262, 270–71 (3rd Cir.2007) ("[W] hether it was [a reckless misreading of FCRA] is a factual issue, not a question of law" and it "cannot be decided ... by [this] Court as a matter of law.").

**STANDARD**

The standard for reviewing objections to Magistrates rulings are reviewed de novo. Please see Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011).

**PRAYER**

**WHEREFORE PREMISES CONSIDERED,** Plaintiff prays for the reasons stated above as well as all of the pleadings, affidavits and information on the record that the Court overrule Defendant's objections and adopt the Report and Recommendations of the Magistrate and deny Equifax's motion to dismiss, and for such other relief, whether at law or in equity, to which Plaintiff is so entitled.

Dated: July 5, 2017

Respectfully submitted,

/s/Dennis McCarty______________

Dennis McCarty
ATTORNEY FOR PLAINTIFF
Mississippi Bar No. 102733
Supreme Court of the United States Bar No. 302174
P.O. Box 111070
Carrollton, TX., 75011
Telephone: 713-704-3375
Fax (817) 887-5069
dmccartylaw@att.net

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of July, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorneys on record:

Date Signed this the 5th day of July, 2017

/s/ Dennis McCarty
**DENNIS MCCARTY**
MS Bar# 102733
Supreme Court of the United States Bar
No. 302174
Attorney for Plaintiff
P.O. Box 111070
Carrollton, Tx 75011
Phone: 817-704-3375
Fax: 817-887-5069